PEOPLE ex rel. DEPEW & S. W. R. CO. v. BOARD OF RAILROAD COM'RS OF STATE OF NEW YORK et al.

(Supreme Court, Appellate Division, Third Department. April 14, 1896.)

Dissenting opinion. For majority opinion, see 38 N. Y. Supp. 528.

PARKER, P. J. (dissenting). The Depew & Southwestern Railroad Company filed its articles of association on June 15, 1895. The Terminal Railway of Buffalo filed its articles of association on June 17, 1895. Each made application upon the same day to the board of railroad commissioners for the certificate required by section 59 of the "Railroad Law" (Laws 1892, c. 676). Such board heard the two applications together. Upon the hearing, it appeared that each company proposed to build a road from the village of Blasdell to the village of Depew, a distance of about 11 miles, all in the county of Erie; and that the road and its construction, as proposed in the articles of association of such company, was precisely the same. It also appeared beyond all question that public convenience and necessity required the construction of such road, and that each company had duly published a copy of its articles of association, as required by said section 59. The board refused to grant any certificate to the Depew & Southwestern Railroad Company, and did grant a certificate to the Terminal Railway of Buffalo. The former company thereupon obtained a certiorari to review the legality of such proceedings and determination, and this matter now comes before us upon the return of such writ.

The board, in its decision, states "that one line can perform all the service that will be required of it, for the present at least, and that the granting of one application must necessarily mean the denial of the other." It then proceeds to examine "the equities" of the two companies, and reaches a conclusion in favor of the Terminal Company, substantially on two grounds: (1) That it appears from the profile and map filed by the two roads that such company's road has a considerably less number of grade crossings of other railroads than the Depew & Southwestern has; (2) that the Depew & Southwestern Railroad will evidently be constructed by capital interested in the Lehigh Valley Railroad Company, a foreign corporation, while the Terminal road would be constructed by capital interested in the New York Central & Hudson River Railroad

Company, and that, therefore, in their judgment, the New York cap-ital should be favored as against the nonresident and foreign capital.

The claim of the relator is that upon the conceded facts appear-ing before the board, and accepted by it, the certificate should have been issued to it, instead of to the Terminal Company. The Ter-minal Railway of Buffalo has obtained an order of court bringing it in as a party to these proceedings, and is now before us, defend-ing the action of the board.

I concede, at the outset of this examination, that, if the two com-panies stood with equal legal rights before the board at the time they made the application for a certificate, the relator can have no relief in these proceedings. But the relator claims that it became a duly-organized railroad company on June 15, 1895, and that the Terminal Company was not organized until June 17, 1895; that, by reason of such priority in organization (inasmuch as the road proposed by both companies is identical), it acquired a prior right to the certifi-cate, if, in the judgment of the commissioners, but one road was necessary. To this it is answered by the Terminal Company that neither company became organized until it had obtained the cer-tificate required by section 59; that no association of individuals can become a railroad corporation until it has complied with all the laws of the state regulating the granting of such privileges, and that one of those laws is found in said section 59, and is to the ef-fect that before any railroad corporation can exercise any of the powers conferred by law upon such corporations, or begin the con-struction of its road, it must secure from the board of railroad com-missioners a certificate that public convenience and a necessity re-quire the construction of the railroad as proposed in its articles of association; that, therefore, when the application was made to the board, neither company had perfected its organization, and neither could claim a preference over the other on that ground. In other words, the claim is that, by such section, the board of railroad com-missioners is given the power of granting or refusing incorporation as a railroad company to any persons applying for such a franchise. I do not so construe the provisions of that section, and aside from the question whether the legislature has the power, under the con-stitution, to devolve such a power upon the board, an examination of the statutes regulating this subject, and a reasonable construc-tion of the requirements of section 59, convince me that no such power was given, and that none such was intended.

By section 2 of the railroad law it is provided that "fifteen or more persons may become a corporation for the purpose of building, maintaining and operating a railroad," etc., "by executing, acknowl-edging and filing a certificate, in which shall be stated," etc. Sec-tion 9 of the general corporation law (chapter 687, Laws 1892) pro-vides that "such certificate duly filed shall be presumptive evidence of its incorporation." These two sections seem to contain express provisions as to how a corporation shall be formed, and as to what shall be evidence that it has been formed. The 15 or more persons become a corporation upon filing the certificate. Such certificate

cannot be filed until the amount of stock required has been paid in (section 2), and not until a tax has been paid to the state for the privilege of so doing. Section 5 of general corporation law. Following those sections, providing for the organization of the corporation, section 59 (chapter 676) provides that "no railroad corporation hereafter formed under the laws of this state shall exercise the powers conferred by law upon such corporation, or begin the construction of its road, until the directors shall cause a copy of its articles of association to be published," as in such section specified; nor until the board of railroad commissioners shall certify that it has been so published, and also "that public convenience and a necessity require the construction of the road as proposed in its articles of association." Now, what is the fair purpose and intent of these provisions? Is it equivalent to saying to the incorporators: "Although you have paid the tax, and filed your certificate, which is the evidence of your incorporation, yet you are not a corporation, and have not yet acquired any corporate powers, until, by some process or other, you shall have secured from the board of railroad commissioners a certificate that the road you propose is a public necessity?" Clearly not. The building of railroads where public necessity did not really need them had become too frequent, and the state deemed it wise to restrict it. In order to do so, it did not change the existing method of organizing railroad corporations. It was still left free for any association of individuals to become such a corporation under the general laws. But the state, by the enactment of section 59, restrains the exercise of its corporate powers, unless the corporation, when so formed, can go a step further, and make proof to the satisfaction of the board of railroad commissioners that public convenience requires its road. If proof of such fact had been required as a condition precedent to the filing of the certificate, then the purpose to withhold all corporate powers, except in those cases where the necessity of the road was made apparent, would be plain; but such a method would seem to be impracticable where corporations are formed only under general laws, for the reason that, if the general laws were made applicable only to such associations and for such enterprises as the board of railroad commissioners might deem expedient, it would be a practical surrender of legislative powers to such board. If the granting of corporate rights depends upon the question whether it be expedient, in the particular instance applied for, then the proofs of expediency must be made to the legislature itself, and its judgment alone must determine that question. People v. Fire Ass'n of Philadelphia, 92 N. Y. 311; Barto v. Himrod, 8 N. Y. 483. Such may have been the reason why a corporation is allowed to be formed under the general laws, but the exercise of its corporate rights suspended until the fact of its necessity is proven to the state. But, whether that is so or not, corporations are still allowed to be formed, and to exist, with corporate powers conferred upon them; and section 59 affects only the exercise of such powers. It is said that one cannot conceive of a corporation that cannot exercise corporate powers, and that, until the right to exer-

cise such powers is granted, the corporation cannot exist. I think one might conceive of a corporation as existing although the exercise of its corporate powers was restrained until the directors should cause its articles of association to be published for three weeks. But concede that the organization of the corporation is not fully completed until it has performed all the conditions required before it can exercise its corporate powers; nevertheless, such fact is of little force in determining the question before us.

The question is, what rights has the organizing company at the time it applies to the board for the necessary certificate? Whether it has or has not a complete corporate organization, it has, at least, so far proceeded towards that condition that certain fixed relations are created between it and the state. By taking the proceedings provided for by section 2 of the railroad law, and by paying the tax to the state, it has entered into a contract with the state that its corporate powers shall be fully enjoyed in the event that it proves, to the satisfaction of the board, the two facts specified in section 59; and it is of no importance whether it appears before such board as a complete corporation or not, so long as its relations with the state secure to it the rights above stated. The duties of such board, and the extent of its powers, seem to be very clearly indicated in such section. It is to take proof upon two questions only: First. Have the articles of association been published as required? Second. Is the proposed road a necessity? Is there anything in those provisions indicating a purpose to give to the board power to grant or refuse to the applicants a franchise? Evidently not. They are to furnish to the state evidence of a fact, or rather two facts, which it is deemed necessary should exist before the franchise already granted shall be fully enjoyed. Therefore it is that a certificate is to be issued provided those facts are proved to the satisfaction of the board, and therefore it is that the certificate of the board to that effect is made satisfactory evidence to the state of the existence of each of such facts. Can it be claimed, under the provisions of this section, that the board may take the proofs, and be fully satisfied that the required publication has been made, and that public convenience demands the road, and yet refuse to give a certificate, because it understands that the road is to be built with foreign capital, or because it is informed that another company is soon to be engaged to build the same road, and it prefers to wait and give the certificate to it? If the applicant for the certificate has as yet acquired no organization and no rights, if it is before the board asking from it the right to exist or to act, there does not seem to be any reason why the board might not refuse, for those reasons or any other that it might fancy. But I hardly think that any one, upon reading the section, would conclude from its language that such a power was conferred upon it.

I conclude, therefore, that any association of individuals that pays the tax, and organizes a railroad corporation as provided by the second section of the railroad laws, does so with the understanding that, before it can exercise the corporate powers so acquired, it must

prove to the satisfaction of the board of railroad commissioners, or to the supreme court, that public convenience requires the construction of its road. Such may be said to be the terms of its charter, so acquired from the state. But I also conclude that it does so with the assurance that, if it is able to make such proof, it has the right to require such board to hear it, and to issue a certificate that it has been made. I do not intend to intimate that the certificate could be claimed unless the proof is entirely satisfactory to the board, or to the supreme court, upon application made to it under that section. I concede that the burden of proving that fact is all upon the applicant, and that a very large discretion is given to the board in determining whether the road proposed is or is not a public necessity; but, being satisfied of that fact, it is as much the duty of the board to issue the certificate as it is to take the proof. In short, I conclude that section 59 does not devolve upon the board of railroad commissioners the power to determine whether the general statutes for the formation of railroad corporations shall or shall not apply to the applicant. It does not invest the board with the power to grant or refuse a franchise. It but imposes upon it the duty to take proof upon two specified facts, and, if satisfied of their existence, to issue to the applicant a certificate to that effect.

The matter of the organization of the corporation, and of its right to exist, is a matter entirely between the applicant and the state; and the relation of the board, and its action on the matter, are but a means provided by the state for the benefit of the applicant. The state, having required the applicant to make such proof, has in this way provided a method for its so doing, and manifest justice requires that it should be given the full benefit of the proof when it is made. Now, in the event that two associations of individuals organize under such sections of the statute two corporations, and each proposes in its articles of association to construct identically the same railroad as the other, and suppose the second is organized before the first has made application for the certificate required by section 59, what should be the rule that fixes and controls the relations between themselves and the state? In view of the relation which, by its incorporation, is at once created between the organizing company and the state, as above stated, should it not be that the corporation subsequently organized should be deemed to take its franchise subject to the right of the other to make the proofs, and have the certificate? Does not the state owe that much protection to the corporation first organized? Such corporation has, as it were, applied to the state for a charter to build the railroad. The state has taken the tax for the same, and given it the charter, but requires it, before proceeding thereunder, to prove to the satisfaction of the railroad commissioners that the road it proposes to build is a necessity. Subsequently, the second company applies for a charter to build the same road. May the state give it a charter also, and allow its board of railroad commissioners to refuse a certificate to the first because it prefers to have the road built by the

second? Certainly, under the old system of creating corporations by special charter, it would have been a breach of public faith to grant the right to build a road to one company, and then annul the charter, and give the same franchise to another; and yet such action would not be different in principle and effect from the joint action of the state and board above supposed. But discussion seems to be unnecessary on this question, for it will hardly be disputed that if, upon organizing under the provisions of section 2, a corporation acquires a right to be heard before the board of railroad commissioners, and to a certificate, if it proves to its satisfaction the two facts required by section 59 to exist, such right would be prior and superior to that of a corporation subsequently formed for precisely the same purpose.

It is argued that when two roads are proposed to be built between the same termini, by different corporations, the board of railroad commissioners may examine the maps and profiles filed by each, and determine which is the better route and road, and base their action upon that ground, if they conclude that but one road is necessary. But whence does the board acquire the authority to examine into those questions. The one question presented to it by section 59 is as to the necessity of the road proposed in the articles of association. Section 2 of the railroad act specifies what the articles shall contain on that subject, and not a word can be found in the statute indicating that the organization of the corporation, or even its right to exercise its corporate powers, is made to depend upon its line or the grades which shall appear upon its map or profile filed before application is made for the certificate. But, on the contrary, the statute expressly provides that both its line and its grades, and even its termini, may be changed by the corporation, after it has begun the construction of the road. See Railroad Law (Laws 1892, c. 676), §§ 6, 13. True, by section 59, the board, in the event that it has refused a certificate, is required to certify to the supreme court, on the request of the applicant, "any maps and papers" on file before it; but such provision is of no force in determining the question now before us. Maps might be very convenient, may be used to explain the road proposed, and yet, so long as the map may be materially changed at any time after work is begun, it evidently cannot be deemed a controlling description or specification of such road. The method of crossing other railroads is provided for by other sections of the railroad laws (see section 12, Railroad Law); and hence it seems clear that the line of the road as delineated on the map or profile is not the road about which the board is to certify. Much less are they authorized to make any particular line, or grade, or mode of crossing another road, a condition of granting the certificate. I do not dispute but that, when it is not possible to build the proposed railroad without crossing at grade many highways and other railroads, the board might take that fact into consideration in determining whether public convenience and necessity required its construction. That fact might be an element in determining the real question submitted to the board

by section 59, and the board might conclude that the dangers to be apprehended from such a road would exceed the public advantages to be derived from the same. See In re New Hamburgh & P. C. R. Co., 76 Hun, 76, 27 N. Y. Supp. 664. But when it appears that the road can be built so as to avoid such grade crossings, and when the directors of the corporation state to the board their readiness to so build it, as appears was done in this case, the mere fact that the profile is drawn at grade is by no means a material fact in considering the question of its public necessity.

In the case before us, the articles of association of each company state substantially as follows: That the kind of road to be built and operated shall be a railroad of standard gauge, to be operated by locomotive steam power, and that it is to be built, maintained, and operated from a point at or near the village of Blasdell, to a point at or near the village of Depew, in the state of New York. Such a statement is all that section 2 requires to be contained in the articles of association; and whether such a road is or is not required by "public convenience and necessity" was the real question presented for the decision of the board. Nor do I understand that the board have taken into consideration the question of crossings in determining the necessity of the road which is proposed in the articles of association of each company. The board treat the roads proposed as precisely the same, and say in their decision "that the granting of one application must necessarily mean the denial of the other." They do not, therefore, decide that the road of the Terminal Company is a necessary road, and that that of the relator is not. They refer to the fact that the profile of the relator's road shows more crossings at grade as a reason why they select the other company, but they do not determine that the road as proposed by the relator in its articles of association is not "required by public convenience and necessity." It appears from the record, too plainly for contradiction, that the board did decide that the road as proposed by the relator was so required, and the certificate issued to the Terminal Company is based upon that very decision. Although there were two applications to the board, there is but one decision. Both applications are heard, and the "equities" (so called by the board) of both companies are considered together, and the decision is that, inasmuch as only one of the proposed roads is necessary, the certificate of necessity must be denied to the relator, because it is issued to the Terminal Company. Thus, the question whether the prior organization does not give the prior right is squarely presented by this determination, and it cannot be evaded upon the theory that the board has decided that the relator's proposed road was not a necessity.

It is said that the question presented in this proceeding was necessarily involved in the decision made by the general term in the Fifth department (In re Depew & S. W. R. Co., 36 N. Y. Supp. 991); and that hence this writ cannot be sustained. I think that the scope of that proceeding could not include the question here presented. That was an application, under section 59, to that court for a cer-

tificate that its proposed road was a public necessity, made by this relator on the ground that such certificate had been denied by the board of railroad commissioners. The Terminal road was not before that court in those proceedings, and evidently any decision that that court could then make could have no force or effect against it. The .question whether such Terminal Company's right to a certificate was not subordinate to the rights which this relator acquired by its prior organization manifestly could not be adjudicated there; and, even if the court had held that it would give a certificate to the relator upon the theory that the one to the Terminal Company was improperly granted, yet such determination falls far short of the relief asked for here. By such a decision the Terminal Company would have been in no way restrained from proceeding with its road. In this proceeding the relief sought is the reversal of the whole proceedings before the board of railroad commissioners, which, in effect, would be to deprive the Terminal Company of its certificate, and to lay down a rule for the guidance of the board upon another application made. The most that the court could have done on that application was to give this relator a certificate, which would in effect allow both roads to be built. In this application the question of a prior right is to be settled, and, if I am correct, results in giving to the relator the one road alone which public necessity requires. And it is evident that that court did not consider that the question here could be decided there. In its opinion, which is in the return before us, it is said:

"The propriety of granting the certificate to the Terminal Company cannot be the subject of consideration in this matter. The claim urged in behalf of the moving company that it was not within the power of the board to deny to it the certificate, and to grant one to the other company, presents a question which can only be considered and determined elsewhere than on this statutory review."

Thus, the court assumed the legality of the proceedings upon which the certificate was issued to the Terminal Company, and denied one to this relator, only on the ground that two such roads were not necessary. So far as there are any expressions in that opinion not in harmony with the conclusions in this, they seem to be "obiter" to the question before the court, and therefore not controlling.

Upon the record in this case, we are to inquire whether, in making its determination, the board violated any rule of law affecting the rights of the parties before it, to the prejudice of the relator. Code, § 2140, subd. 3. The error complained of is not that the board refused to determine that the road proposed by the relator was a public necessity, but that, having decided that it was, it issued the certificate to another company, and therefore refused it to the relator. If the refusal to issue the certificate had been solely on the ground that its road was not a necessity, I concede that the relator's remedy, and its only remedy, would have been to apply to the supreme court, under the provisions of section 59 (Laws 1892, c. 676); but, for the error of which it now complains, no relief could have been obtained in such proceeding, and therefore it is no bar to this one. The whole question seems to me to turn

upon a single proposition: If, upon its organization, under section 2 of the railroad law, the relator acquired a right to make the proof before the board "that public convenience and a necessity required the construction of the road as proposed in its articles of association," and to demand a certificate to that effect in the event that it did satisfy the board of that fact, an error has been committed by the board in the determination which it has made. Such determination ignores entirely such a right on the part of the relator. It proceeds upon the theory that an applicant appears before that board without any rights whatever; that, although it might prove to the entire satisfaction of the board all that section 59 requires it to prove, yet the certificate may be denied on some ground not specified in any statute, and of which the applicant could have no anticipation. Such a theory of the powers and duties of the board, under the provisions of section 59, is, in my judgment, altogether too broad. Upon the application of the relator to the board, it should have determined whether the road proposed in its articles of association was or was not a public necessity, without reference to the application of the Terminal Company; and, if only one road such as it proposed in such articles was necessary, the preference should have been given to it, rather than to the Terminal Company. The relator had acquired that right of priority over the other company, and the board erred in disregarding it.

For these reasons, I think the determination of the board awarding the certificate to the Terminal Company, and refusing it to the relator, should be annulled, with costs.
cur.